697 So.2d 865 (1997)
Paul E. EIRMAN, Appellant,
v.
OLDE DISCOUNT CORPORATION, Appellee.
No. 96-1711.
District Court of Appeal of Florida, Fourth District.
May 21, 1997.
Certification Denied August 28, 1997.
Michael D. Tannenbaum, West Palm Beach, Sanford Kantor of Kantor & Kantor, Leigh R. Lasky of Beigel, Schy, Lasky, Rifkind, Fertik & Gelber, New York City, Edna L. Caruso and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Nathan D. Goldman of McGuire, Woods, Battle & Boothe, L.L.P., Jacksonville, Wallace L. Timmeny, Stephen M. Colangelo, Mary S. Head of McGuire, Woods, Battle & Boothe, Washington, DC, Gerry S. Gibson and Bradford D. Kaufman of Steel Hector & Davis LLP, West Palm Beach, for appellee.
POLEN, Judge.
Paul Eirman, a customer of securities broker Olde Discount Corp. (Olde Discount), appeals an order dismissing his multi-count complaint against the broker. Eirman alleged Olde Discount participated in the practice of routing its customer's orders through wholesale dealers, who in turn paid Olde Discount "order flow payments," as a type of commission. Eirman alleged Olde Discount retained these order flow payments and failed to adequately disclose this practice to its customers. The trial court dismissed Eirman's complaint with prejudice on the basis federal law, more specifically the Securities Exchange Act of 1934, (Exchange Act), preempted state law by implication. The issue of whether federal law preempts state law claims concerning order flow payment is one of first impression in the appellate courts of Florida. We affirm the dismissal of Eirman's complaint, and adopt the reasoning expressed by the courts in Guice v. Charles Schwab & Co., 89 N.Y.2d 31, 651 N.Y.S.2d 352, 674 N.E.2d 282 (1996); Orman v. Charles Schwab & Co., 285 Ill.App.3d 937, 221 Ill.Dec. 720, 676 N.E.2d 241 (1996); and Dahl v. Charles Schwab & Co., 545 N.W.2d 918 (Minn.1996).
As explained by the court in Guice, "[t]he practice of order flow payment consists of remuneration in the form of monetary or other benefits given to retail securities broker-dealers *866 for routing customers' orders for execution to wholesale dealers or other market makers in the subject securities." Guice, 651 N.Y.S.2d at 354, 674 N.E.2d at 284. That court found the plaintiffs' state claims preempted by the 1975 amendments to the Exchange Act, which granted the Securities and Exchange Commission (SEC) authority to shape a new national market system, gave it power to regulate, and authorized it to police the new system. Id. 651 N.Y.S.2d at 356-357, 674 N.E.2d at 286-287. In 1995, the SEC adopted a new rule, 11Ac1-3, to require disclosure on each new customer's account statement as to the broker-dealer's policies concerning receipt of order flow payments, and in doing so recognized the "drastic impact that an outright ban [on order flow payments] would have on the securities industry." Id. 651 N.Y.S.2d at 358, 674 N.E.2d at 288. The Guice court concluded "[s]tate enforcement of agency law standards of disclosure cannot help but upset the policybased delicate balance Congress directed the SEC to achieve in the regulatory regime envisaged under the 1975 amendments to the Securities Exchange Act." Id. 651 N.Y.S.2d at 361, 674 N.E.2d at 291.
The Orman court accepted the Guice court's reasoning that if each state were allowed to specify the nature of disclosure required, brokerage firms would be compelled to tailor their disclosure statement to each state's law and the "carefully-crafted SEC disclosure requirement would have little, if any, influence." Orman, 221 Ill.Dec. at 723, 676 N.E.2d at 244. Because state law would adversely affect the SEC's ability to regulate uniformly, the Orman court concluded state law was preempted. Id. It accepted the Guice court's determination a drastic undermining of congressional objectives would likely result if state claims were found not to be preempted, in that brokerage firms would abandon acceptance of order flow due to the threat of lawsuits all around the country based on breach of common-law agency relationships. Id. Because the SEC authorized the use of order flow payments and recognized their benefit to the industry, any activity defeating this goal would be an obstacle to federal law. Id.
In adopting the reasoning expressed in Guice, Orman, and Dahl, we decline Eirman's invitation to follow the opinions in Dumont v. Charles Schwab & Co., 1995 WL 262262 (E.D.La.1995) and Thomas v. Charles Schwab & Co., 1995 WL 626522 (W.D.La. 1995), as we find the thorough analysis of this issue contained in Guice, Orman, and Dahl more persuasive.
Finally, we affirm the dismissal of Eirman's complaint as to the count alleging an action under Florida's Deceptive and Unfair Trade Practices Act (the "Little FTC Act"). Section 501.212(1) exempts from its coverage "an act or practice required or specifically permitted by federal or state law." Section 501.212(1), Fla. Stat. (1993). Receipt of order flow payments was permitted by federal law during the time period at issue here.
AFFIRMED.
WARNER and GROSS, JJ., concur.