# Zwiercan v. General Motors Corporation

C.P. of Philadelphia County, June Term 1999, no. 3235.

*John M. Mason,* for plaintiff.
*Joseph E. O'Neil, John J. O'Donnell, J. Andrew Langan, Douglas M. Poland* and *Brian Kavanaugh,* for defendants.

COHEN, *J.,* September 11, 2002—Defendant General Motors Corporation has filed a motion for summary judgment as to plaintiff's claim for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.

## BACKGROUND

This action focuses on vehicles manufactured by GM between 1990 and 1999 (the class vehicles). The plaintiff is the owner of a 1997 Chevy Blazer, which is considered a class vehicle. Plaintiff alleges that the front seats of all class vehicles are designed in such a way that the front seats are prone to collapse rearward during moderate speed rear-end collisions. Although the plaintiff's vehicle has not been involved in a rear-end collision, she has brought claims, as a class representative, on behalf of herself and similarly situated owners of class vehicles, for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and breach of implied warranty of merchantability. On May 22, 2002, this court granted defendant's motion for summary judgment as to the breach of warranty claim and denied summary judgment as to the UTPCPL claim.[1]

Now, before this court is defendant's motion for summary judgment against the plaintiff's remaining UTPCPL claim, plaintiff's opposition to defendant's motion for summary judgment, and plaintiff's reply memorandum in support of motion for summary judgment. In its motion, defendant asserts that plaintiff's UTPCPL claim should be dismissed because plaintiff's admissions establish that she cannot prove the elements of reliance and causation to support her UTPCPL claim. Additionally, defendant argues that plaintiff's UTPCPL claim should be dismissed because it is barred under the economic loss doctrine and, to the extent the plaintiff's claim is based on defendant's statements to the National High-

---

1. See *Shirley Zwiercan v. General Motors Corp.*, 2002 WL 1472335 (C.P. Phila. May 22, 2002) (Herron, J.)

way Traffic Safety Administration (NHTSA), such claim is pre-empted under the Supremacy Clause of the United States Constitution.

Upon review of the pleadings and after hearing oral argument, defendant's motion for summary judgment is granted in part and denied in part.

## DISCUSSION

In accordance with Pa.R.C.P. 1035.2, this court may grant summary judgment where the evidentiary record shows either that the material facts are undisputed, or the facts are insufficient to make out a prima facie cause of action or defense. *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998). To succeed, a defendant moving for summary judgment must make a showing that the plaintiff is unable to satisfy an element in his cause of action. *Basile v. H & R Block,* 777 A.2d 95, 100 (Pa. Super. 2001). Here, the defendant alleges that based on plaintiff's admissions, plaintiff has failed to establish the essential elements of "reliance, materiality, and causation" with respect to defendant's acts or omissions. To avoid summary judgment, the plaintiff, as the non-moving party, must adduce sufficient evidence on the issues essential to its case and on which it bears the burden of proof such that a reasonable jury could find in favor of the plaintiff. *McCarthy,* 724 A.2d at 940. In addressing the issue, this court is bound to review the facts in a light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Manzetti v. Mercy Hospital of Pittsburgh,* 565 Pa. 471, 482, 776 A.2d 938, 945 (2001). The plaintiff must be

given the benefit of all reasonable inferences. *Samarin v. GAF Corp.,* 391 Pa. Super. 340, 350, 571 A.2d 398, 403 (1989). Therefore, this court must first determine whether the plaintiff has pled each of the required elements for her claim under the UTPCPL.[2]

## I. *Plaintiff's UTPCPL Claim Survives Summary Judgment*

Plaintiff claims that the defendant's acts and omissions violated the UTPCPL. Based on the complaint, it appears that plaintiff is alleging a violation of UTPCPL §201-2(4)(xxi). Section 201-2(4)(xxi) defines unfair methods of competition or unfair or deceptive acts or practices as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." (the catchall provision).[3] To establish a claim under the catchall provision, a party must either prove the elements of common-law fraud, or that defendant's deceptive conduct caused harm to the

---

2. The issue of damages was previously addressed in the defendant's first motion for summary judgment in this case. This court denied defendant's first motion to dismiss the plaintiff's UTPCPL claim, holding that plaintiff's cost to repair the alleged defective seats is sufficient to sustain a claim of damages in a UTPCPL action. *Zwiercan v. General Motors,* 2002 WL 1472335 (C.P. Phila. May 22, 2001) (Herron, J.); See also, *Grant v. Bridgestone Firestone Inc.,* 2002 WL 372941 (C.P. Phila. Jan. 10, 2002) (ruling that cost to repair a defect is sufficient to bring a claim under the UTPCPL); *Solarz v. Daimler Chrysler Corp.,* 2002 WL 452218 (C.P. Phila. Mar. 13, 2002) (Herron, J.) (holding that failure to allege actual loss or out-of-pocket cost is not fatal to a UTPCPL claim).

3. Because this section of the UTPCPL appears to cover all other acts of fraud or deceptive conduct that are not specifically enumerated in the other articles of UTPCPL §201-2(4), Pennsylvania courts have dubbed §201-2(4)(xxi) the "catchall provision."

plaintiff. See *e.g., Weiler v. SmithKline Beecham Corporation,* 53 D.&C.4th 449 (C.P. Phila. 2001) (Herron, J.); *Foultz v. Erie Insurance Exchange,* 2002 WL 452115 (C.P. Phila. Mar. 13, 2002) (Herron, J.); *Abrams v. Toyota Motor Credit Corporation,* 2001 WL 1807357 (C.P. Phila. Dec. 5, 2000) (Herron, J.).[4] Although this court's holdings establish that "reliance" is not a required element for a plaintiff to proceed under a "deceptive" practice claim, as discussed below, plaintiff's "reliance" has been established in the instant case.

The first substantive question presented by the parties is whether the plaintiff has alleged facts sufficient to establish that she relied on the acts or omissions of the defendant. Although defendant correctly states that its general advertising slogans, are not actionable because they are "mere puffery," the crux of the issue lies not in the statements made by the defendant, but rather, its silence when it had a duty to speak. Defendant argues that it was under no duty to disclose the alleged existence of

---

4. Defendant urges this court to reconsider its opinions holding that "reliance" is not a required element to establish a "deceptive" act under the catchall provision. As this court finds that reliance has been sufficiently pled in the present case, the court finds it unnecessary to address our previous decisions. Defendant further argues that *Weinberg v. Sun Company Inc.,* 565 Pa. 612, 777 A.2d 442 (2001) requires this court to dismiss plaintiff's claim for failure to demonstrate reliance. The instant case is distinguishable. In *Weinberg,* the Pennsylvania Supreme Court, reviewing a false advertising claim, considered whether a party could bring a UTPCPL claim when the party did *not* hear the alleged misleading advertisement. In the instant case, this court is addressing whether a manufacturer who fails to warn the public of a known safety defect can be held liable for engaging in a deceptive or fraudulent practice. The underlying issue, therefore, is whether the manufacturer breached its duty to speak, not whether the manufacturer falsely advertised its product.

defective seats in its cars.[5] Defendant further argues that it cannot be liable because it made no statements to plaintiff concerning the safety of its seats. The defendant is mistaken; silence can be actionable.

Pennsylvania law holds that the deliberate non-disclosure of a material fact is just as actionable as an intentional false statement. *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 451, 51 A.2d 759, 764 (1947). In defining "fraud," the Pennsylvania Supreme Court held that fraud exists when "deception of another . . . is brought about by a misrepresentation of fact . . . or by *silence.*" *McClellan Estate,* 365 Pa. 401, 407-408, 75 A.2d 595, 598 (1950). (emphasis added) However, in order for silence to be actionable there must be a duty to speak. *Smith v. Renaut,* 387 Pa. Super. 299, 306, 564 A.2d 188, 192 (1989); see generally, 37 C.J.S. Fraud §15.

The duty to speak most often arises when there is a fiduciary or confidential relationship between parties.[6] In the context of business transactions, when there has been no active misrepresentation, and no fiduciary or

---

5. Defendant does not brief the issue of whether a duty to speak exists between a manufacturer and its customers, but instead focuses the argument on whether non-feasance is actionable under the UTPCPL, citing *Gordon v. Pennsylvania Blue Shield,* 378 Pa. Super. 256, 548 A.2d 600 (1988) (holding that an insurer's failure to pay an insured's claim amounts to non-feasance and is not actionable under the UTPCPL). Defendant's argument misses the point. In the present case, the critical issue is whether the defendant's intentional failure to warn against a known defect is actionable under the UTPCPL. Such behavior, if true, would be an act of misfeasance not non-feasance as the defendant suggests.

6. It is undisputed that the plaintiff and defendant were not in a fiduciary or confidential relationship.

confidential relationship exists, there is an apparent absence of Pennsylvania case law discussing the existence of a duty to speak.

Here, the court must determine whether a duty exists between a manufacturer and an ordinary consumer. In this regard, although this court is not bound by such decisions, federal courts interpreting Pennsylvania law have held that there is generally no duty to speak where the parties are "sophisticated business entities, entrusted with equal knowledge of the facts." *Duquesne Light Co. v. Westinghouse Electric Corporation,* 66 F.3d 604, 612 (3d Cir. 1995); *City of Rome v. Glanton,* 958 F. Supp.1026 (E.D. Pa. 1997) (discussing the application of the Restatement (Second) of Torts §551). In *Duquesne,* the Third Circuit addressed, in a breach of contract case, whether a nuclear steam equipment supplier's alleged nondisclosures concerning equipment sold to an electric utility company constituted actionable fraud. The court recognized that Pennsylvania cases were unclear regarding when a duty to speak arises outside of the fiduciary or confidential relationship context.[7] *Duquesne,* 66 F.3d at 612. Following the guidance in analogous Pennsylvania cases,[8] the court held that there is no duty to speak

---

7. The court acknowledged that Pennsylvania courts have often cited to the Restatement (Second) of Torts §551, in adopting the duty to speak requirement. However the court found that Pennsylvania case law does not provide much guidance as to what extent the courts are bound by the Restatement's discrete criteria.

8. *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 451, 51 A.2d 759, 764 (1947) (finding that a bank's misrepresentations to a purchaser of stock was actionable because the purchaser was justified in relying on bank's statements since the bank, as the holder and seller of the stock is the proper source of information); *Scaife Co. v. Rockwell-Standard Corporation,* 446 Pa. 280, 285 A.2d

between two sophisticated business entities with equal knowledge of the facts and legal representation, because neither party is reliant on the other for information. *Id.* at 612.

In the instant case, however, the parties do not have the same level of sophistication or knowledge. The plaintiff as an ordinary purchaser of an automobile, does not have access to the same information as the defendant manufacturer. Plaintiff also alleges that defendant's internal memoranda and studies, as well as its defense in prior litigation involving the alleged defective seats, establish that defendant knew of the alleged material defect in its seats years before plaintiff purchased her vehicle. Therefore, unlike the facts under *Duquesne,* here, the unsophisticated plaintiff is at the mercy of the defendant to inform her of a known safety defect. Following the persuasive reasoning of *Duquesne,* this court finds that a manufacturer has a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer. Under the facts of this case, a reasonable jury could find that the defendant had a duty to inform the plaintiff of the alleged safety defect in its class vehicles.

---

451 (1971) (holding that the continuous business relationship between a selling corporation and a purchaser gave rise to a duty to speak based on reliance between the parties). *Quashnock v. Frost,* 299 Pa. Super. 9, 445 A.2d 121 (1982) (addressing termite infestation of a home, the court stated that disclosure is required "since caveat emptor is no longer rigidly applied to the complete exclusion of any moral or legal obligation to disclose material facts."); *Smith v. Renaut,* 387 Pa. Super. 299, 564 A.2d 188 (1989) (relying on *Quashnock,* to hold that a seller has an affirmative duty to disclose a known termite infestation.)

Moreover, the Pennsylvania Supreme Court mandated that the UTPCPL is to be liberally construed to prevent unfair or deceptive practices and place the seller and consumer on more equal footing. *Commonwealth v. Monumental Properties Inc.,* 459 Pa. 450, 458-60, 329 A.2d 812, 816-17 (1974). Recognizing a duty to speak in the present case is consistent with general fraud concepts and is in line with the purpose of the UTPCPL. Such an interpretation further defines the scope of the UTPCPL, by giving meaning to the "duty to speak" requirement, and by placing consumers on more equal footing with manufacturers. Moreover, this court finds support for this conclusion in the holdings of other jurisdictions.

In cases involving defective parts in automobiles, other courts have held that a defendant manufacturer has a duty to disclose knowledge of material defects in its products if the consumer could not be expected to otherwise learn of the defect. *In re Ford Motor Company Ignition Switch Products Liability Litigation,* 2001 WL 1266317 (D.N.J. 1997). In *In re Ford Motor Company,* the Third Circuit addressed the issue of fraudulent concealment in a case involving defective ignition switches installed in Ford vehicles. Although the Third Circuit dismissed some of the plaintiffs' claims with leave to amend their complaint to plead with more specificity, the court found that the third party manufacturer of the defective part had a duty to disclose the defect. *Id.* at *20-*21. The court stated "that the applicable standard in most states across the country could be generally expressed as follows: a defendant manufacturer has a duty to disclose its knowledge, if any, of material defects in the items manufac-

tured, so long as the consumer could not be expected to otherwise obtain the information." *Id.* at \*21.

Similarly, in a case involving General Motors, a New York State court denied General Motors' motion to dismiss, holding that the Attorney General of New York properly stated a cause of action alleging fraudulent suppression and concealment of a material fact, where General Motors allegedly knew that a part would prematurely fail and did not disclose that fact to consumers. *State of New York v. General Motors Corp.,* 120 Misc.2d 371, 446 N.Y.S.2d 124 (Sup. Ct. 1983). The court based its analysis on New York's general common-law fraud provisions, which have been interpreted to find a duty to speak when a party has superior knowledge or has means of knowledge not available to both parties. *Id.* at 374; see also, *Kuelling v. Roderick Lean Mfg. Co.,* 75 N.E. 1098, 1102 (1905). Additionally, the Second Circuit, applying New York law, concluded that the duty to speak, in the context of a business transaction, has been found in three circumstances: (1) where the party has made a partial or ambiguous statement; (2) where the parties are in a fiduciary or confidential relationship; and (3) where one party possesses superior knowledge, not readily available to the other party. *Brass v. American Film Technologies Inc.,* 987 F.2d 142, 150 (2d Cir. 1993). (citations omitted)

Additional support for finding a duty to speak in consumer protection cases can be found in the decisions of the Illinois Supreme Court. In interpreting Illinois' consumer protection statute, the court held that omissions or concealment of a material fact in the conduct of trade or commerce constitutes fraud. *Connick v. Suzuki Motor*

*Company Ltd.,* 174 Ill.2d 482, 504, 675 N.E.2d 584, 595 (1996), *rehearing denied,* (1997). In *Connick,* the court found that Suzuki's failure to warn plaintiffs of the vehicle's known tendency to rollover was a violation of the consumer fraud statute. *Id.* at 504-505. The court also found that such a defect would be material to a buyer of the car and that it is unnecessary to plead a common-law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment. *Id.* at 505, citing *Celex Group Inc. v. Executive Gallery Inc.,* 877 F. Supp. 1114, 1129 (N.D. Ill. 1995).

Therefore, based on analogous Pennsylvania law, as well as federal decisions and precedent from other state courts, this court finds that a duty to speak exists, in the context of a business transaction with an ordinary non-business consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer. Plaintiff has alleged facts that, if true, establish that defendant knew of the alleged defect and that knowledge of such a defect would have been material to the plaintiff's decision to purchase her vehicle. It is disingenuous for the defendant to argue that knowledge of a defective front seat that could seriously injure or kill its occupant would not be material to a consumer.

Next this court must determine whether the plaintiff has established that she relied on the acts or omissions of the defendant. Defendant argues that plaintiff's deposition testimony establishes that the plaintiff did not rely on defendant's acts and could not have relied on defendant's alleged non-statements. This court finds that the defendant both incorrectly summarizes plaintiff's deposition testimony, and misstates the issue.

First, the plaintiff's deposition testimony sufficiently establishes that she "relied" on the defendant's silence and purchased her class vehicle believing that the front seats in her car were safe and free from defect. The plaintiff states, in reference to the front seats of her car that, "she assumed they were safe [and that] they stayed where they are . . . I just assumed from being a General Motors product that I had for a long time that they were safe." Pl.'s resp. mem. of law at 36. This statement supports plaintiff's claim that defendant's silence lead her to assume the front seats were safe.

Defendant argues that the plaintiff cannot establish actual reliance because plaintiff "relied" on a statement that was never uttered. When actual reliance cannot be established, courts have looked to the nature of the parties' relationship and materiality of the statement to establish a presumption of reliance. Relying on general principles of contract law, the Pennsylvania Supreme Court has held that "reliance" can be presumed when a party makes material misrepresentations. See *e.g., New York Life Insurance Co. v. Brandwene et ux.,* 316 Pa. 218, 172 A.2d 669 (1934); *McClellan Estate,* 365 Pa. 401, 408, 75 A.2d 595, 598 (1950) (citing Restatement of Contracts §476(1)); see also, *Vasquez v. Superior Court of San Joaquin County,* 4 Cal.3d 800, 484 P.2d 964, (1971) (holding that the rule in California and elsewhere is that reliance upon alleged false representations can be inferred from the circumstances).

More recently, in *Peerless Wall and Window Coverings Inc. v. Synchronics Inc.,* 85 F. Supp.2d 519 (W.D. Pa. 2000) a federal court cited the Pennsylvania Supreme Court in addressing the question of a "presumption of

reliance." In *Peerless,* a case involving a software manufacturer's failure to disclose that its software was not Y2K compliant, the court stated that "when one would not have entered the transaction in the presence of a full disclosure of a material fact . . . that person has obviously relied." *Id.* at 534 (relying on *New York Life Insurance Co. v. Brandwene,* 316 Pa. 218, 172 A.2d 669 (1934)). Although the court dismissed the plaintiff's fraud claim, it did so because the plaintiff could not present evidence that plaintiff would not have purchased the software if the defect had been disclosed. Therefore, the *Peerless* opinion holds open the possibility that where, as here, a plaintiff can demonstrate that they would not have purchased a product had they been aware of the defect, reliance on the defendant's omission can be presumed.

Moreover, this court held, in certifying a class UTPCPL claim, that when a duty to speak exists, reliance by the class plaintiffs is implicit and is established by operation of law. *Katlin v. Tremoglie,* 43 D.&C.4th 373, 391 (1999). In *Katlin,* a therapist failed to reveal to his patients the fact that he was not licensed to practice medicine. *Id.* The court found that the "doctor" had a duty to disclose the material fact that he was not licensed to practice medicine. In reaching this holding, the court relied on *Basile v. H & R Block Inc.,* 729 A.2d 574, 584 (Pa. Super. 1999)[9] to extend the presumption of reliance be-

---

9. Although the *Basile* decision was appealed, reversed and remanded, the proposition for which *Katlin* court relied on was affirmed on appeal in *Basile v. H & R Block Inc.,* 777 A.2d 95 (Pa. Super. 2001). On appeal, the Superior Court held that the trial court abused its discretion in granting summary judgment. The court reversed the trial court decision, holding that a tax consultant's failure to inform clients about interest rates charged on the company's accelerated tax refund

yond the fiduciary relationship and apply it to a special or confidential relationship. *Id.* Recognizing that the presumption is not based on the form but rather the substance of the relationship, the court found no compelling reason not to extend the duty to speak to a case involving allegations of a breach of a confidential relationship. *Id.*

Here, the plaintiff has established that the defendant's silence regarding the alleged defect in the class vehicles was material to the plaintiff's decision to purchase the car. The plaintiff testified that she assumed in the face of defendant's silence that the front seats of the car were safe, and that had defendant disclosed that there was a safety defect in the front seats, she would not have bought the car. Pl.'s resp. mem. of law at 37. Following the court's rationale in *Peerless,* and *Katlin,* plaintiff's reliance on defendant's active concealment can be presumed because the concealment of the alleged defect would be material to the plaintiff's decision to purchase her car. In addition, the plaintiff's own testimony supports finding that she relied on defendant's material omission. Therefore,

---

service constituted a breach of a fiduciary duty. Furthermore, the court found, that the facts, if true, established that a fiduciary duty not only existed between the clients and the individual tax consultant, but also between the clients and H & R Block as the orchestrating entity. *Id.* at 107. The court stated that "the evidence suggests that the plaintiffs trusted not the individuals who staffed any given Block office, but Block as an organization." *Id.* The court was persuaded by the pervasive media presence of H & R Block and the fact that the company, through the advertising of its "rapid refund" service, attempted to "achieve a false intimacy" with the customer. *Id.* Therefore, based on the confidential relationship, the court found a level of trust and reliance on the part of the customers.

this court finds that it is appropriate under these facts to expand the presumption of reliance.

## II. *The Plaintiff Is Barred From Using the UTPCPL To Recover for Alleged Fraudulent Statements Made to the NHTSA*

In its motion, defendant asserts that to the extent that plaintiff's UTPCPL claim is based on alleged misrepresentations to the NHTSA, such "statements" cannot form the basis of a state action to enforce NHTSA regulations. Defendant is correct in stating that insofar as plaintiff's UTPCPL claim seeks redress for misstatements to the NHTSA, it is a "fraud on the agency" claim, which is properly pre-empted by federal law. See *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341 (2001) (holding that a patient's state law fraud claims against a manufacturer were a "fraud on the agency" claim, because the state claim was based on manufacturer's statements to the Food and Drug Administration, which the FDA has authority to police itself). Therefore, because the plaintiff cannot use the UTPCPL to enforce an alleged fraud on a federal agency, defendant's motion for summary judgment on this issue is granted.

## III. *The Economic Loss Doctrine Does Not Bar Plaintiff's UTPCPL Claim*

Defendant argues that plaintiff's UTPCPL claim is barred by the economic loss doctrine because plaintiff has suffered no personal injury. Defendant suggests that because plaintiff's only harm is the cost to repair the allegedly defective seats, her appropriate remedy, if any,

is based in contract law.[10] Plaintiff responds that the economic loss doctrine does not apply under these facts because the doctrine does not apply to the alleged intentional acts by defendant.

In Pennsylvania, the purpose of the economic loss doctrine is to maintain the separate sphere of the law of contract and tort. *New York State Electric & Gas Corporation v. Westinghouse Electric Corporation,* 387 Pa. Super. 537, 550, 564 A.2d 919, 925 (1989). Originally, the economic loss doctrine was applied to products liability claims, with the expectation that parties could recover purely economic damages under contract theory. *East River S.S. Corporation v. Transamerica Delaval Inc.,* 476 U.S. 858, 871 (1986). The reach of the doctrine has been justified on the basis that parties can protect themselves by negotiating the terms of a manufacturer's liability. *Id.* at 872-73. Pennsylvania courts addressing the economic loss doctrine have accepted the Supreme Court's rationale and focused on the ability of the purchaser to recover economic harm under a breach of warranty claim. *REM Coal Co. Inc. v. Clark Equipment Co.,* 386 Pa. Super. 401, 563 A.2d 128 (1989). In an attempt to guide future courts on the application of the doctrine, the Superior Court stated that "the proper focus is not on the type of risk, but the actual harm for which plaintiff seeks recovery." *Id.* at 411, 563 A.2d at 133. Unfortunately, there is much confusion in the Pennsylvania cases as to the scope and breadth of the economic loss doctrine. For the reasons discussed below, this court finds

---

10. This court, in partially granting defendant's first summary judgment motion, held that plaintiff has no claim for breach of contract until her front seats actually manifest a failure. *Zwiercan v. General Motors,* 2002 WL 1472335 (C.P. Phila. May 22, 2002) (Herron, J.)

that the economic loss doctrine does not bar plaintiff's UTPCPL claim.[11]

Recently, the Third Circuit in *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir. 2002) held that a plaintiff's UTPCPL claim was barred by the economic loss doctrine. Although not bound by the Third Circuit's opinion, this court will address the decision in an effort to clarify the law. In *Werwinski,* the Third Circuit's ruling focused on the parties' appropriate redress under contract law. The case involved a class of consumers that had incurred substantial costs to repair failed transmissions in their vehicles. The parties alleged that the manufacturer knowingly installed defective parts in the transmissions which caused the transmissions to fail. Here, the alleged defects in the front seats of the class vehicles have not yet manifested themselves, because the cars have, fortunately, not been involved in rear-end collisions. Despite the fact that the front seats have not yet injured anyone, and the plaintiff cannot bring a breach of contract claim, the plaintiff's UTPCPL claim for intentional concealment and deceptive practices is ripe. The plaintiff need not wait until she is physically injured to

11. In declining to extend the application of the economic loss doctrine to intentional fraud claims, this court noted, there is an absence of Pennsylvania case law on the subject, but found support for the proposition that the doctrine should not bar claims where the representation is intentionally false. *First Republic Bank v. Brand,* 50 D.&C.4th 329 (C.P. Phila. 2000) (Herron, J.); see also, *Teledyne Tech Inc. v. Freedom Forge Corporation,* no. 3398, slip. op. 20 n.17 (C.P. Phila., April 19, 2002) (Sheppard, J.); *Amico v. Radius Communications,* 2001 WL 1807924 (C.P. Phila.) (Herron, J.). The defendant asks this court to reconsider its previous holdings in light of the Third Circuit's holding in *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir. 2002). However this court finds the instant case distinguishable from both our previous cases and *Werwinski.*

bring a claim for deceptive practices when the manufacturer had a duty to inform her of a known defect.

Although the *Werwinski* court applied the economic loss doctrine to UTPCPL claims, it did so on the belief that exempting statutory claims from the doctrine would nullify the doctrine. While this court agrees that in certain cases the doctrine should apply to bar statutory claims, a blanket application of the economic loss doctrine to the UTPCPL fails to address the purpose of enacting the statute. The Pennsylvania Supreme Court clearly stated that the purpose of the UTPCPL is to be liberally construed to prevent unfair or deceptive practices. *Commonwealth v. Monumental Properties Inc.*, 459 Pa. 450, 458-60, 329 A.2d 812, 816-17 (1974). To apply the economic loss doctrine to *all* claims under the UTPCPL has the potential to eviscerate the UTPCPL itself. The instant case is an example of the danger of applying the economic loss doctrine too broadly.

Here, the plaintiff has raised a legitimate question as to whether the defendant's actions were deceptive under the UTPCPL, but does not have a viable breach of contract claim. To apply the economic loss doctrine to bar the plaintiff's statutory claim here would frustrate the intent of the UTPCPL, in this context, and would be inconsistent with the purpose of the economic loss doctrine. This is not a case where the plaintiff is attempting to bring a tort action in lieu of a breach of contract claim. If the doctrine were to bar the plaintiff's action, the plaintiff would be estopped from litigating a claim which the legislature specifically provided for when it amended the UTPCPL to protect against deceptive practices. Therefore, this court finds that, under the facts of this case, the

plaintiff's UTPCPL claim should not be barred by the economic loss doctrine.

## CONCLUSION

For the reasons stated above, this court holds that the plaintiff has alleged sufficient facts which if accepted by a finder of fact, would be sufficient to establish a valid UTPCPL claim against defendant and such claim is not barred by the economic loss doctrine. Insofar as plaintiff seeks recovery under the UTPCPL for statements made by the defendant to the NHTSA, such claim is barred by federal pre-emption. Accordingly, this court is granting in part and denying in part defendant's motion for summary judgment.

## ORDER

And now, September 11, 2002, upon consideration of the motion for summary judgment of defendant, General Motors Corporation, plaintiff Shirley Zwiercan's response thereto, and oral argument from the parties, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion is granted insofar as plaintiff is barred by federal pre-emption from claiming a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Act for statements made by defendant to the National Highway Transportation Safety Administration, and denied as to the remaining claims.