**Nilda PROHIAS, et. al., Plaintiffs**

v.

**PFIZER, INC., Defendant.**

**No. 05 22658 CIV JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

May 29, 2007.

Craig R. Spiegel, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Lance August Harke, Sarah Becket Clasby, Howard Mitchell Bushman, Harke & Clasby, Miami, FL, for Plaintiffs.

Barbara Wrubel, Skadden Arps Slate Meagher & Flom, New York City, Edward Walter Gerecke, Carlton Fields, Tampa, FL, Mark S. Cheffo, Skadden Arps Slate Meagher & Flom, Adam Jason Steinberg, Carlton Fields, Miami, FL, for Defendants.

ORDER ON PFIZER'S MOTION TO DISMISS OTIS CHARLES, ROBERT MARTIN, AND THE PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND

JORDAN, District Judge.

The plaintiffs filed a proposed nationwide class action, alleging that Pfizer engaged in false and misleading advertising of its cholesterol-lowering drug, Lipitor.

Pending is Pfizer's motion to dismiss [D.E. 19]. On April 24, 2007, I entered an order addressing Pfizer's arguments against plaintiffs Nilda Prohias, Nancy Yost, the Teamsters Plan, and Health Care for All, and dismissed the complaint as to those plaintiffs' claims in their entirety. I now address Pfizer's motion to dismiss against the remaining plaintiffs: Otis Charles, Robert Martin, and the Pennsylvania Employees Benefit Trust Fund. For the reasons stated below, Pfizer's motion to dismiss as to these plaintiffs is GRANTED IN PART and DENIED IN PART.

## I. FACTS [1]

### A. LIPITOR'S FDA APPROVALS

Pfizer is the manufacturer of Lipitor, the most widely prescribed statin for lowering cholesterol. It is undisputed that Lipitor successfully lowers cholesterol. Lipitor was first approved by the Food and Drug Administration ("FDA") in 1996, as an adjunct to diet, to reduce elevated LDL–C cholesterol in patients with primary hypercholesterolemia. *See* Complaint at ¶ 93. On July 10, 1998, the FDA approved Lipitor as an adjunct to diet to reduce elevated total cholesterol and elevated LDL–C cholesterol in all patients. *Id.* at ¶ 94. On July 30, 2004, Lipitor was approved for the first time for the prevention of cardiovascular disease in certain patients. Specifically, Lipitor received additional FDA labeling approval for reducing the risk of heart attacks "[i]n adults without clinically evident coronary heart disease, but with multiple risk factors for coronary heart disease, such as age ≥ 55 years, smoking, hypertension, low HDL–C, or a family history of early coronary heart disease." *Id.* at ¶ 96.

In sum, until July 30, 2004, Lipitor was not approved for any patients for reducing the risk of coronary heart disease ("CHD"). Rather, the FDA concluded that, notwithstanding the cholesterol-lowering benefits of Lipitor, the "relationship between Lipitor's lipid-lowering effect and its effect on cardiovascular diseases or survival is not known." *Id.* at ¶ 8. After July 30, 2004, Lipitor was approved for reducing the risk of heart attacks in adults with multiple risk factors, but its approval was still not extended to include "reduction in cardiovascular morbidity and mortality." *Id.* at ¶ 96.

### B. PFIZER'S ADVERTISING CAMPAIGN FOR LIPITOR

Pfizer's print and television advertisements for Lipitor frequently show pictures of women or the elderly with their cholesterol numbers attached with text warning that "high cholesterol is a risk factor for heart disease." Complaint at ¶¶ 5–6; *see id.* at ¶ 107 (undated Lipitor advertisement claiming that high cholesterol is a risk factor for heart disease). The plaintiffs allege, however, that there is no scientific support for the claim that Lipitor reduces the risk of heart disease in women or elderly patients who do not already have heart disease or diabetes. The plaintiffs allege that the purpose of the advertisements is to create the impression that Lipitor protects against heart disease, thus misleading consumers as to the benefits of Lipitor. In particular, as a result of Pfizer's advertising campaign, 34% of the individuals polled in a recent survey indicated that they believe that Lipitor has been shown to prevent heart attacks. *See id.* at ¶ 91. The advertisements for Lipitor encourage consumers to ask their doctor if

---

1. The facts are adopted from my order granting Pfizer's motion to dismiss against Nilda Prohias, Nancy Yost, the Teamsters Plan, and Health Care for All.

Lipitor is right for them, thus inducing them to visit a doctor.

Pfizer also engages in promotion of Lipitor to physicians. Specifically, Pfizer employs thousands of salespersons to call on physicians and promote Pfizer products by passing out literature and promotional materials regarding the benefits of Lipitor, including prevention of heart disease in women and elderly patients who have not been diagnosed with heart disease. *Id.* at ¶¶ 82—84.

In sum, the plaintiffs allege that Pfizer has engaged in a multifaceted advertising campaign to convince doctors and consumers that Lipitor reduces heart disease, even though there was not scientific evidence of such benefits.[2] Such misleading advertising, according to the plaintiffs, creates artificial demand for Lipitor and an artificial increase in Lipitor's price, thus causing economic injury to Lipitor purchasers. The plaintiffs do not allege that Lipitor failed to lower their cholesterol levels, or that they were physically injured in any way by taking Lipitor. Accordingly, the plaintiffs seek relief from Pfizer on three legal theories: (1) the consumer fraud acts of the several states, (2) unjust enrichment, and (3) negligent misrepresentation.

## C. CLASS PLAINTIFFS ADDRESSED IN THIS ORDER

### 1. OTIS CHARLES

Mr. Charles is a resident of Miami–Dade County, Florida. He is 65 years old and has not been medically diagnosed with heart disease or diabetes. It is unknown whether Mr. Charles has multiple risk factors for CHD. Mr. Charles has paid for some or all of the purchase price of Lipitor prescribed to him, and seeks, in part, return of these funds. The parties agree that his claims are governed by Florida law.

### 2. ROBERT MARTIN

Mr. Martin is a resident of Franklin County, Massachusetts. He is 65 years old and has not been medically diagnosed with heart disease or diabetes. It is unknown whether Mr. Martin has multiple risk factors for CHD. Mr. Martin has paid for some or all of the purchase price of Lipitor prescribed to him, and seeks, in part, return of these funds. The parties agree that his claims are governed by Massachusetts law.

### 3. THE PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND

The Pennsylvania Employees Benefit Trust Fund (the "Fund") is a labor management trust fund duly organized under the laws of the Commonwealth of Pennsylvania. The Fund provides health care benefits, including prescription drug coverage to over 270,000 participants and beneficiaries, including active and retired employees of the Commonwealth. The Fund has paid for some or all of the

---

2. The plaintiffs go even further, alleging that Pfizer's marketing campaign "obfuscates, and indeed, **completely fails to disclose**, the fact that while studies indicate that Lipitor reduces cholesterol, there is no evidence that this reduction has any effect on the development of coronary heart disease [ ] or mortality rates for women and elderly patients." Complaint at ¶ 10 (emphasis added). But the advertisements included within their complaint completely disprove this allegation, as most of the advertisements explicitly state that Lipitor "has not been shown to prevent heart disease or heart attacks." *See* Complaint at ¶¶ 89, 101, 106. "[W]here there is a conflict between allegations in a pleading and exhibits attached thereto, it is well-settled that the exhibits control." *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.1940).

purchase price of Lipitor prescribed to its beneficiaries. It alleges that if not for Pfizer's deceptive advertising campaign, it would have excluded Lipitor from approved formulary schedules, set a lower value in the formulary, or set a higher co-pay obligation. *See* Complaint at ¶ 137. Accordingly, the Fund seeks recovery of the money it paid to purchase Lipitor for its beneficiaries, and the money that it "overpaid" on account of Lipitor's inflated price.[3] The parties agree that the Fund's claims are governed by Pennsylvania law.

## II. LEGAL STANDARD

A motion to dismiss is granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See McCulloch v. PNC Bank Inc.,* 298 F.3d 1217, 1220 (11th Cir.2002). The scope of the court's review of a motion to dismiss is limited to the four corners of the complaint. *See St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. DISCUSSION

### A. PREEMPTION AND THE SAFE HARBORS

Pfizer first argues that the plaintiffs' claims should be dismissed because they are preempted by federal law. Specifical-

ly, Pfizer contends that it is the exclusive province of the FDA to decide what information should or should not be included in Lipitor's label, and that any lawsuit that seeks to impose liability on Pfizer for advertisements that are consistent with the approved label directly conflict with the FDA's jurisdiction. To support its argument, Pfizer largely relies on the FDA's preemption position set forth in its Final Rule on "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products," 71 Fed.Reg. 3922–97 (Jan. 24, 2006). Alternatively, Pfizer argues that it is protected from liability under the consumer fraud acts for advertisements that are consistent with Lipitor's FDA approved label. I agree and disagree in part with Pfizer. Specifically, I conclude that the plaintiffs' claims arising from pre-July 2004 advertisements are *not* preempted or protected by the safe harbor statutes, but that claims arising from post-July 2004 advertisements *are* preempted and protected by the safe harbor statutes.

### (1) PRE-JULY 2004 ADVERTISEMENTS

The plaintiffs allege that, prior to July of 2004, Pfizer marketed Lipitor *inconsistent* with its FDA-approved label. In particular, prior to July 2004, Lipitor was not approved to reduce the risk of coronary heart disease in any group of people. In fact, according to the FDA's approval, its effect on CHD was unknown. The plaintiffs allege, however, that Pfizer advertised, contrary to its approved label, that Lipitor reduces the risk of coronary

---

3. For the reasons explained in my April 24, 2007, order, PEBTF cannot seek recovery of any alleged overpayments based on a "price inflation" theory. But because PEBTF's overpayments claim is different than an ordinary consumer's claim (since it alleges that it has some control over the price it pays by setting co-payments and formulary values), PEBTF has sufficiently pled some "overpayment" damages as to its claims that survive Pfizer's motion to dismiss.

heart disease. Thus, based on the allegations in the complaint, the FDA has not approved Pfizer's advertisements either explicitly or implicitly by approving the statements on its label. Moreover, in this lawsuit, the plaintiffs seek advertising requirements that parallel the approved label. Under the FDA's own analysis, there is no conflict between these claims and the FDA's jurisdiction, at least at this stage of the litigation:

> FDA recognizes that FDA's regulation of drug labeling will not preempt all State law actions. The Supreme Court has held that certain State law requirements that parallel FDA requirements may not be preempted. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (holding that the presence of a State law damages remedy for violations of FDA requirements does not impose an additional requirement upon medical device manufacturers but "merely provides another reason for manufacturers to comply with federal law").

"Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products," 71 Fed.Reg. 3922–01, 2006 WL 160271. Therefore, the plaintiffs' claims based on pre-July 2004 advertisements are not preempted. *See In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation,* 2006 WL 2374742, *10–12 (N.D.Cal.2006)(deferring to FDA's preemption statement regarding required warnings, but holding that claims of false or misleading advertising are not preempted, and denying Pfizer's motion to dismiss on the basis of conflict preemption because "there is nothing in the record from which

the Court could conclude that the FDA has actually reviewed all of the submitted advertisements, let alone conclude that the FDA's review means that it has definitively determined that the advertisement was not misleading").

■ For the same reasons, I conclude that the plaintiffs' pre-July 2004 claims are not barred by the states' respective safe harbor statutes. The safe harbor statutes of the consumer fraud acts of Florida and Massachusetts, which are applicable to Mr. Charles' and Mr. Martin's claims, respectively, only bar lawsuits challenging conduct which is specifically permitted by a federal or state regulatory scheme.[4] For example, as explained by Judge Seitz in *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.,* 420 F.Supp.2d 1288 (S.D.Fla.2005):

> It is well-established that FDUTPA does not apply to any acts or practices that are "required or specifically permitted by federal or state law." *3B TV. Inc. v. State,* 794 So.2d 744, 747 (Fla. 1st DCA 2001) (quoting Fla. Stat. § 501.212(1)); *see also Eirman v. Olde Disc. Corp.,* 697 So.2d 865, 866 (Fla. 4th DCA 1997) (holding that conduct did not violate FDUTPA because it was authorized by then-existing rules of the U.S. Securities & Exchange Commission). However, an act does not need to violate a specific rule or regulation in order to be considered deceptive. *Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.,* 643 So.2d 22, 24 (Fla. 4th DCA 1994). Therefore, the relevant analysis for this Court is whether Tenet, as the moving party, has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct

---

4. Pfizer does not argue that PEBTF's claims are barred by Pennsylvania's consumer fraud

act, since that act apparently does not include a safe harbor.

alleged in the Complaints, not whether Plaintiffs have demonstrated that Tenet's conduct violates a specific rule or regulation.

*Id.* at 1310. *See also* M.G.L.A. 93A § 3 ("Nothing in this chapter shall apply to . . . actions otherwise permitted . . . by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."). As explained above, the plaintiffs allege that Pfizer has engaged in an advertising scheme which is contrary to that sanctioned by the FDA, and does not allege that the misleading advertisements were ever approved, or even viewed by the FDA. Therefore, Pfizer has not demonstrated that its conduct is protected by the relevant safe harbor provisions.

### (2) Post-July 2004 Claims

On the other hand, the plaintiffs' post-July 2004 claims do not survive Pfizer's motion to dismiss because they are preempted by federal law and barred by the applicable state safe harbor statutes. In addition, even if they are not preempted by federal law, or barred by the safe harbor statutes, I conclude that the post-July 2004 advertisements are not misleading as a matter of law and that the plaintiffs therefore fail to state a claim.[5]

In July of 2004, the FDA approved Lipitor to reduce the risk of heart attacks in patients, including women and the elderly, with multiple risk factors for coronary heart disease. Its FDA approved label specifically includes this indication. Accordingly, any advertisements that stated or implied that Lipitor reduced the risk of heart disease or heart attacks simply marketed an approved use for the drug. Although I recognize that Lipitor was not approved to reduce the risk of heart attacks in all patients, the alleged advertisements derive from, and largely comport with, the approved label. For this reason, the plaintiffs efforts to hold Pfizer liable for the advertisements conflicts with the FDA's jurisdiction over drug labeling, and specifically its approval of Lipitor to reduce the risk of heart disease in some patients. Those claims are therefore preempted by federal law. *See Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, 2005 WL 2993937, *4 (D.Del. 2005);[6] *Bextra*, 2006 WL 2374742, at *5–8. In addition, because the claims made by Pfizer in the post-July 2004 advertisements were implicitly authorized by the FDA, the claims in the advertisements fall within the safe harbor provisions of the Florida and Massachusetts consumer fraud acts. *Cf. id.* at *2–4 (holding that

---

**5.** Because a misleading representation is also an element of the plaintiffs' negligent misrepresentation claims, this holding also applies to the plaintiffs' cause of action for negligent misrepresentation for post-July 2004 advertisements.

**6.** As explained by the Delaware district court in action filed by the PEBTF against Astrazeneca Pharmaceuticals based on similar allegations,

the FDA is given primary authority to regulate prescription drug[ ] [marketing]. 36 Fed.Reg. 18,539 (1971) ("The Food and Drug Administration has primary responsibility with respect to the regulation of the

truth or falsity of prescription drug advertising."). The information included in the labeling of a new drug reflects a determination by the FDA that the information is not "false or misleading." 21 C.F.R. § 314.125(b)(6) (stating the FDA must deny a new drug application if it determines that "[t]he proposed labeling is false or misleading in any particular"). By approving information to be included in the drug labeling, the FDA has determined that the information complies with its rules and regulations.

*Pennsylvania Employee Benefit Trust Fund*, 2005 WL 2993937, *2.

the plaintiffs' false advertising claims under Delaware's consumer fraud act were barred by the statute's safe harbor). In fact, the plaintiffs themselves recognize that their post-July 2004 claims are barred by the statutes' safe harbors, given the changes in the FDA approved label. *See* Plaintiffs' Opposition at 37 ("prior to the July 30, 2004, labeling change, the state CPAs at issue here offer no safe harbor for Pfizer's unfair and deceptive conduct").

Moreover, given the FDA's additional approvals of Lipitor, namely, to reduce the risk of heart attacks in certain patients, Pfizer's post-July 2004 advertisements were not misleading as a matter of law. The information included in the labeling of a new drug reflects a determination by the FDA that the information is not "false or misleading." 21 C.F.R. § 314.125(b)(6). *See also Pennsylvania Employee Benefit Trust Fund*, 2005 WL 2993937, *2. Thus, even if the advertisements did not comport precisely with Lipitor's approved label by claiming that Lipitor reduces the risk of coronary heart disease, the alleged advertisements generally comport with the approved label, and are therefore not misleading as a matter of law. *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F.Supp.2d 296, 301 (S.D.N.Y.1998) (holding, in a misleading advertising claim, that statements that are "similar enough to the approved statements," even if not "precisely" the same as the FDA-approved labeling are "neither false nor misleading" as a matter of law).

In sum, any way that I look at it, the change in Lipitor's approved label prevents the plaintiffs' from proceeding with claims that Pfizer's advertisements were misleading. I agree with Pfizer that any and all claims stemming from its post-July 2004 advertisements are dismissed. But Mr. Charles, Mr. Martin, and PEBTF may proceed with their consumer fraud act claims relating to pre-July 2004 advertisements. Whether or not the plaintiffs can show any inconsistencies between Lipitor's approved label and Pfizer's advertisements, and whether such inconsistencies are in fact misleading, are questions of fact which I cannot address at this stage of the litigation. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (emphasizing liberal pleading standard under Rule 8, and explaining that federal courts and litigants must therefore rely on summary judgment to weed out unmeritorious claims). I do, however, have serious doubts about whether the plaintiffs can succeed in presenting evidence of misleading advertisements because most of the advertisements included in the complaint specifically state that Lipitor "has not been shown to prevent heart disease or heart attacks," *see* Complaint at ¶¶ 89, 101, 106, and those advertisements are not misleading as a matter of law because they substantially comport with the FDA approved label.

## B. Unjust Enrichment

■■ Unjust enrichment is an equitable doctrine. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Intern.*, 329 F.3d 1241, 1245 n. 3 (11th Cir.2003) (quoting P. Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 Texas L.Rev. 1767, 1789 (2001)). The doctrine only applies where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit;

(2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005); *Massachusetts v. Mylan Laboratories*, 357 F.Supp.2d 314, 323 (D.Mass.2005); *Com. ex rel. Pappert v. TAP Pharmaceutical Products, Inc.*, 885 A.2d 1127, 1137 (Pa. Cmwlth.2005). Pfizer argues that the plaintiffs' claims for unjust enrichment should be dismissed because they received the benefit of their bargain, and because they otherwise have an adequate remedy at law. I agree.

First, Mr. Charles and Mr. Martin fail to state a claim for unjust enrichment. Both men purchased a cholesterol reducing drug, and both men obtained cholesterol reduction as a result. Therefore, in a general sense, they obtained the benefit of their bargain. Unjust enrichment "cannot exist where payment has been made for the benefit conferred." *N.G.L. Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (2000). Still, Mr. Charles and Mr. Martin claim that they would not have purchased Lipitor but for the misleading advertisements. But their argument is too little too late—they have already received the benefit from taking Lipitor, even if they now claim that they do not want that bargain. Alternatively, they argue that they *overpaid* for Lipitor given that it lowers cholesterol but does not reduce the risk of heart disease. I have already rejected a price inflation theory of damages in this lawsuit, and again reject it as applied to Mr. Charles' and Mr. Martin's claims. *See* Order Granting in Part Motion to Dismiss [D.E. 52]. More-over, Lipitor is now approved for the reduction of heart attacks in elderly men and women with multiple risk factors for CHD. Therefore, Mr. Charles and Mr. Martin cannot claim that they did not get the entire benefit of their bargain, i.e., lower cholesterol *and* reduced risk of heart disease, unless they allege that they do not have multiple risk factors for heart disease—allegations which they fail to plead in their complaint.[7]

Likewise, I conclude that the PEBTF fails to state a claim for unjust enrichment. First, the PEBTF paid for a cholesterol-reducing drug for its beneficiaries, and its beneficiaries (like Mr. Charles and Mr. Martin) received the benefit of reduced cholesterol. Under these circumstances, it is not inequitable for Pfizer to retain the price of Lipitor paid by the PEBTF. Moreover, PEBTF itself argues that it would not have purchased Lipitor for those beneficiaries whom Lipitor did not benefit—"Undeniably, had Pfizer advised PEBTF of Lipitor's shortcomings, it would not have paid for it on behalf of the members it did not aid." Plaintiffs' Opposition at 48. Given the new indications for Lipitor, the only groups of people who Lipitor possibly did not aid are women and the elderly, who do not have multiple risk factors for CHD. PEBTF does not allege that any of its members fall within this group. Therefore, even if these facts could provide a basis for an unjust enrichment claim, PEBTF fails to state such a claim.

Furthermore, the plaintiffs' claims for unjust enrichment should be dismissed because the plaintiffs do not plead that they lack an adequate legal remedy. *See American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1178 (M.D.Fla.2005) ("It

---

7. Undisputedly, they have at least one of the risk factors for CHD, i.e., their age.

is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists."); *Mylan Laboratories,* 357 F.Supp.2d at 324 (to state claim for unjust enrichment under Massachusetts law, a plaintiff must plead, *inter alia,* the absence of a remedy provided by law). In fact, in their unjust enrichment claim, the plaintiffs seek recovery for the exact same wrongful conduct as in their consumer fraud act claim. If Pfizer's marketing scheme is misleading, and if the plaintiffs have been damaged by such scheme, then the plaintiffs have a remedy at law as a properly pled claim under the consumer fraud acts or for negligent misrepresentation. *See American Honda Motor,* 390 F.Supp.2d at 1178 ("The [d]efendants' quasi contract claim is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for . . . unjust enrichment."); *In re Lupron Marketing and Sales Practices Litigation,* 295 F.Supp.2d 148, 182 (D.Mass.2003) (dismissing unjust enrichment claim because plaintiffs have an adequate remedy at law under their RICO claims).

Accordingly, the plaintiffs' claims for unjust enrichment are dismissed.

## C. PFIZER'S REMAINING ARGUMENTS FOR DISMISSAL OF PEBTF'S CLAIMS

Pfizer raises several other arguments against PEBTF's remaining claims for negligent misrepresentation and consumer fraud under Pennsylvania's Unfair Trade Practices and Consumer Protection Law

(UTPCPL). I address these below, and conclude that Pfizer's motion as to these claims should be denied.

To state a claim for negligent misrepresentation under Pennsylvania law, a plaintiff must plead four elements: (1) a misrepresentation of a material fact; (2) the represent or must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the misrepresentation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Eiser v. Brown & Williamson Tobacco Corp.,* 2006 WL 933394, *6 (Pa.Super.2006). "[U]nder Pennsylvania law, an omission or nondisclosure is only actionable under the theory of negligent misrepresentation if there is a duty to speak." *See Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F.Supp.2d 371, 380 (E.D.Pa.1998). *See also Zwiercan v. General Motors Corp.,* 58 Pa. D. & C.4th 251, 257–58 (Pa.Com.Pl.2002) ("in order for silence to be actionable there must be a duty to speak").

> The duty to speak most often arises when there is a fiduciary or confidential relationship between parties. In the context of business transactions, when there has been no active misrepresentation, and no fiduciary or confidential relationship exists, there is an apparent absence of Pennsylvania case law discussing the existence of a duty to speak.

*Zwiercan,* 58 Pa. D. & C.4th at 257—58.

Here, the PEBTF does not allege that Pfizer actively misrepresented the benefits of Lipitor to it. It cannot, because on the face of the complaint there is not a single

advertisement targeted or even addressed to the PEBTF. Rather, as the plaintiffs emphasize in their opposition, their allegations are based on omissions and misleading statements used to market Lipitor to women and the elderly. *See* Response at 34; *id* at 35 citing Complaint at ¶ 3 ("Plaintiffs Complaint established that Pfizer's marketing blitz, aimed at both physicians and consumer, misled both women and the elderly into purchasing Lipitor"). Thus, as explained in *Zwiercan*, PEBTF's ability to state a claim depends on whether Pfizer had a duty to inform the PEBTF of Lipitor's alleged limitations in preventing CHD. *See Zwiercan*, 58 Pa. D. & C.4th at 257—58.

The issue in *Zwiercan* was whether General Motors had a duty to warn consumers of Chevy Blazers that the car's front seats were prone to collapse during moderate speed rear-end collisions. Notwithstanding the lack of fiduciary relationship between the parties, the Pennsylvania Court of Common Pleas concluded that because "[t]he plaintiff as an ordinary purchaser of an automobile, does not have access to the same information as the defendant manufacturer," a jury could find that General Motors had a duty to speak. *Id.* at 262. Specifically, the Pennsylvania Court stated: "Therefore, based on analogous Pennsylvania law, as well as federal decisions and precedent from other state courts, this court finds that a duty to speak exists, in the context of a business transaction with an ordinary nonbusiness consumer, when the seller has superior knowledge of a material fact that is unavailable to the consumer."

■ No doubt the allegations in this case are wildly different. PEBTF does not allege any safety concerns or defects with Lipitor, which makes it very hard for me to conceive of any reasonable obligation to speak. But because I must apply Pennsylvania law, which, at this stage of the litigation suggests that PEBTF has pled its claim sufficient to withstand a motion to dismiss, I will allow the claim to go forward. Significantly, I do not hold that Pfizer has a duty to speak based on the facts alleged in the complaint. I hold only that PEBTF may be able to state a claim against Pfizer under Pennsylvania law based on the facts in the complaint. Pfizer's motion to dismiss PEBTF's negligent misrepresentation claim is therefore denied.

■ Similarly, Pfizer's motion to dismiss the PEBTF's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is denied, because the PEBTF has pled its claim sufficient to withstand a motion to dismiss. *See International Union of Operating Engineers Local # 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J.Super. 275, 894 A.2d 1136, 1144–45 (N.J.Super.A.D.2006) (third-party payor may state a claim against pharmaceutical manufacturer under New Jersey's consumer fraud act for concealing information about a drug's safety). In particular, there is a split in Pennsylvania law regarding the elements required to state a claim under the "catch all" provision of the Pennsylvania UTPCPL, 73 Pa. C.S. § 201–2(4)(xxi), which PEBTF claims to proceed under. In *Weinberg v. Sun Co., Inc.*, 565 Pa. 612, 618, 777 A.2d 442 (Pa.2001), the Pennsylvania Supreme Court held that, to state a claim under the UTPCPL, a plaintiff must plead the elements of common law fraud, including reliance and causation. But since *Weinberg*, several courts have held that the Pennsylvania legislature's 1996 amendment to the UTPCPL (which was not considered or

addressed in *Weinberg* ) eliminated the requirement to plead reliance and causation in a strict sense, instead imposing a causal nexus requirement. *See, e.g., Weiler v. SmithKline Beecham Corp.,* 2001 WL 1807382, 53 Pa. D. & C.4th 449, 452–55 (Pa.Com.Pl.2001). Thus, in *Weiler,* the Pennsylvania Court of Common Pleas found that the plaintiff had sufficiently pled its claim under the "catch-all" provision of the UTPCPL because the complaint alleged that "the damages suffered by the class are a 'direct and proximate' result" of [the defendant's] violations of the UTPCPL. *Id.* at 457. In light of the well-reasoned opinions limiting *Weinberg* 's holding, I conclude that the PEBTF has, for now, sufficiently pled a claim under the UTPCPL because it alleges that it suffered damages as a result of Pfizer's deceptive advertising scheme. *See id.* at 456 ("plaintiffs' claim for breach of the catchall provision is legally sufficient so long as the complaint alleges 'deceptive conduct which creates a likelihood of confusion or of misunderstanding.' ").

Accordingly. Pfizer's motion to dismiss PEBTF's claims for negligent misrepresentation and under the UTPCPL in their entirety are denied.

## IV. CONCLUSION

Pfizer's motion to dismiss the claims filed by Mr. Charles, Mr. Martin, and the PEBTF is GRANTED IN PART and DENIED IN PART. Mr. Charles, Mr. Martin, and the PEBTF may proceed only on their consumer fraud act and negligent misrepresentation claims based on allegedly misleading advertisements prior to July of 2004. All claims for unjust enrichment, and all other claims arising from post-July 2004 conduct, are dismissed without prejudice.

Pfizer shall file its answer as to the claims which have not been dismissed by June 15, 2007. By June 22, 2007, the parties shall file a joint scheduling report.