PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
There is only one real issue in this case — whether the trial judge committed reversible error in excluding a part of the testimony of one of the defendant’s expert witnesses.[1]
I cannot agree that the magistrate judge abused his discretion in refusing to allow Dr. Michael Reddix to express his opinion as to whether Terbutaline caused Barbara Huss’ cardiomyopathy. Plaintiffs at trial objected that defense counsel’s question invited Dr. Reddix to exceed his disclosure filed under Rule 26. Looking to a colloquy with the judge during a proffer of Dr. Reddix’s testimony and to a post-verdict denial of a new trial, the majority holds that the ruling rested on a broader assessment of qualifications. Perhaps, but both grounds were sound. There was no abuse of discretion in excluding this particular expression of opinion on either ground, and one solid ground for an evidentiary decision is sufficient for our deferential review.
I
Our decision in Tanner binds this panel. It would have been error to allow Dr. Reddix to express an opinion regarding specific causation. The majority flips conformity to Tanner into reversible error. In Tanner we reversed a judgment for plaintiffs where the trial court over objection allowed a medical doctor with general medical training to venture an opinion that doctors attending a childbirth caused the child to contract cerebral palsy.
As in Tanner, Reddix sought to move in the latter part of his testimony to matters that “hinge[d] on ... the depth of [his] knowledge of a complicated, specialized medical subject matter.”[2] It was this move to which the plaintiff rightfully objected. Under Tanner it would have been reversible error to admit Reddix’s opinion that Terbutaline was not the cause. After quoting the judge’s explanations for excluding this part of Reddix’s testimony, the majority repeats defense-supplied protests of Reddix’s competence, but these arguments do not undermine the judge’s salient observations regarding Reddix’s thin training and experience on the relevant subjects. The weakness of the majority’s position speaks from the pages of its deei *464 sion.[3] Even if the matter could be argued both ways, there it must lie.
II
Dr. Reddix’s expert report filed under Rule 26 stated that his opinion would be that cardiomyopathy was idiopathic. He gave this opinion to the jury without any objection. This accords with the core defense asserted at trial — that science did not know the cause of cardiomyopathy and hence the prescribing doctors could not have known. The trial court was well within its discretion in not allowing the witness to expand his testimony over plaintiffs’ objection, from “it was not knowable” to “it was not a cause of injury.” Nor did the objection come as a surprise. Defendants had on the eve of trial sought to expand Reddix’s anticipated trial testimony beyond the filed Rule 26 Report but at the start of the trial the judge sustained plaintiffs’ objection to the effort. It is not happenstance that defense counsel led the direct testimony first over the ground within the Rule 26 disclosure. This put before the jury Dr. Reddix’s opinions that cardiomyopathy is idiopathic, the heart of the defense. Only then did defense counsel push the envelope of the trial court refusal to allow a last minute expansion of the report.
Huss’ condition, Reddix’s report opined, “cannot be said to have been caused, to a reasonable of [sic] medical certainty/probability, by the administration of oral Terbutaline. Postpartum cardiomyopathy occurs in a small number of women who are pregnant. Such condition is idiopathic in nature.” At trial he sought to go further, to bridge the gap by eliciting an opinion that Terbutaline was not the cause. This crucial distinction underlies the ground for the objection, rightly sustained, at trial.
The majority claims that Dr. Reddix’s “report has detailed criticism of the medical literature,” but the full extent of this criticism is that the studies are “outdated,” that they “often confuse pulmonary edema with cardiomyopathy,” and that they use data from IV administration of Terbutaline when oral administration was at issue in Huss’ case. Important points, but the critique is emphatically not detailed, nor is it damning. Most importantly, the latter two points were abundantly testified to at trial — and the former point was never proffered.[4] Nowhere does Reddix’s report mention sample sizes or other statistical challenges to the general causation claims of the plaintiffs articles; as for the “study involving 9,000 patients,” it was merely attached to the report, and the report offers no reference to it, commentary on it, or description of it whatsoever.[5]
*465 Further, the defense never offered into evidence the article that Reddix referred to in his proffer, despite many points at which it could have done so. The defense did not even try to seek admission. Defense expert Dr. Tucker, vastly more qualified than Reddix as to peer-reviewed medical literature and testifying immediately after the allegedly erroneous exclusion, was not asked about the article.[6] This despite the fact that Dr. Tucker did testify to a point at which the article would be relevant, if the majority here were correct: “I’ve never been able to find any relationship, a causal relationship between Terbutaline and cardiomyopathy. Granted, Terbutaline has other side effects, and we’ve talked about those. But as far as cardiomyopathy, I’ve never been able to find any causal relationship between the two.” The defense never cross-examined plaintiffs witnesses using the article as the basis for challenge, even when it repeatedly would have been appropriate to do so. They did confront them with other articles and other medical literature on the specific causation and standard of care arguments, because these were the sites of actual conflict at trial. The defendant Dr. Gayden was directly challenged on causation, but he too never mentioned this article.
In sum, the defense did not offer freestanding statistical challenges, and Reddix’s statistical observations were to support a causation conclusion that Reddix was rightly restricted from rendering. Reddix’s partial exclusion was not an error, and certainly no abuse of discretion. Even if there were error, any reasonable view of the defense case at trial yields the insight that it was not prejudicial to the defense case, which received ample airing at trial. The proffered testimony lacks coherence sufficient to persuade that its exclusion was prejudicial. The jury was already awash with testimony of both sides regarding specific causation, all admitted without objection and explained at length in direct and cross examination. And Dr. Reddix was followed by another defense expert who testified at length to conclude the case.
Ill
After erasing the Husses’ jury verdict based on the district court’s exclusion of a portion of Dr. Reddix’s testimony, Judge DeMoss then includes nine pages of dicta “making observations” about the admissibility of the Husses’ expert evidence, an issue plainly not before this court; this while finding reversible error in the district court’s refusal to admit part of the testimony of a defense expert — which somehow escapes its volunteer Daubert examination. Neither Judge Owen nor myself join this part of the opinion on admissibility. Judge DeMoss’ opinion itself acknowledges that the defendants waived any challenge to the admissibility of the Huss’ expert evidence by not objecting before or during trial, despite the explicit warning in the pretrial order that all objections to depositions not submitted to the trial judge ten days prior to trial — including the video deposition of Dr. Murray that was played for the jury — are waived.[7] It also acknowledges that the defendants *466 failed to preserve a challenge to the sufficiency of the evidence, but never mentions that this failure restricts this court’s review of the Huss’ expert evidence to “whether the plaintiff has presented any evidence in support of his claim”[8] — a standard that beyond peradventure the Husses surpassed.
The uniform law of the circuits,[9] the Fifth included,[10] is that without a timely objection to the admission of expert evidence, appellate review is waived absent plain error. The unobjected-to evidence is competent and passes to the jury for credibility and weight determinations.[11]
*467 IV
This case answers no scientific questions and sheds little of the light of science on its difficult medical problems. Able lawyers tried this case. This jury answered the questions the court and the lawyers put to it.
Defendants have had their day in three courts and, accepting as we do the answer by the Supreme Court of Mississippi to our certified question regarding limitations, have raised no other grounds of error which persuade me to disturb this jury verdict. To these eyes the court today oversteps its judicial role and in doing so produces grave error. In lowering the hurdle of Tanner for defendants it fails to treat plaintiffs and defendants with an even hand and in the process perversely invites the junk science it decries.
I would affirm.

. Two matters may be quickly put aside. Judge DeMoss writing for himself instructs the trial court on remand. I do not think this one judge exegesis is sound. Nor can I join the panel majority's statement that it need not decide the question of sufficiency of the evidence since the case is being remanded. The testimony of the Husses' expert witnesses was admitted without objection at trial. To question the sufficiency, on this record, is inexplicable.

. Tanner v. Westbrook, 174 F.3d 542, 547 (5th Cir. 1999) (reversing on grounds that a doctor’s expert testimony was erroneously admitted, when it went beyond general standard of care and into specific causation issues on which he lacked relevant background knowledge or experience). Tanner was demanding of qualifications for plaintiffs’ expert witnesses. It cannot be relaxed for defendants.

. The majority's counter argument to the magistrate judge essentially amounts to pointing out that Reddix was "familiar with the term cardiomyopathy,” and had "prescribed drugs similar to Terbutaline.” Plainly, these are inadequate challenges to a trial judge’s exercise of discretion.

. The defense counsel said, in chambers: "Plaintiffs have brought up pulmonary edema and tried to put it in the same intellectual wastebasket as cardiomyopathy and act like they’re the same thing. It’s important that he explains to the jury that they are not the same thing.”
The judge’s ruling, in reply, was: "Well, he did so. It took him forever to get around to it. But I’m not going to let him express an opinion as to whether the administration of this drug caused or did not cause the cardiomyopathy here.”

. Even if it had been discussed in the report or in testimony, it would have affected little. The article is by no means a decisive refutation of the causal connection between cardiomyopathy and Terbutaline under the circumstances presented by Huss. The article did not involve a controlled experiment, nor were the factors relevant to Huss’ case adequately accounted for in the data analysis.

. Dr. Tucker was a manuscript reviewer for the American College of Obstetricians and Gynecologists, and he boasts an extensive list of research publications over the course of his career. He would thus have been imminently more qualified to critique the plaintiff’s causation studies, had the defense actually been interested in mounting such a challenge.

. Puckett v. United States, 556 U.S.-, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ("If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, the claim for relief from the error is forfeited.... If an error is not properly pre *466 served, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed.' ’).

. Polanco v. City of Austin, 78 F.3d 968, 974 (5th Cir.1996).

. United States v. Mornan, 413 F.3d 372, 379 (3d Cir.2005) ("Where a defendant fails to object to the admission of evidence (including expert testimony) during trial, this Court reviews the decision to admit that evidence for plain error.”); United States v. Gaskin, 364 F.3d 438, 460 n. 8 (2d Cir.2004) ("Where a party questions whether sound scientific methodology provides a basis for an expert opinion, it may move to preclude the admission of the opinion. Gaskin made no such motion; instead, he stipulated to the admissibility of the expert opinion. Under such circumstances, he cannot complain on appeal that the opinion lacks foundation.”) (internal citation omitted); Macsenti v. Becker, 237 F.3d 1223, 1231 (10th Cir.2001) ("[W]e find no plain error such as to excuse a timely Daubert objection to plaintiff Mascenti’s expert testimony. We are convinced that Defendant forfeited the opportunity to subject the expert testimony of Dr. Sullivan and plaintiff’s other experts to a Daubert challenge by failure to make a timely objection before that testimony was admitted.”); C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 437 (4th Cir.1997) ("Fleet made no Daubert objection to admission of the extensive testimony of SmithKline’s expert witnesses about the blue-dye tests' methodology, conduct, and results. Fleet contends that it need not have: that its challenge here is not to the admissibility of this evidence but to its insufficiency when tested by Daubert principles to support the district court’s finding of the tests' scientific reliability. That cannot be right.”); Marbled Murrelet v. Babbitt, 83 F.3d 1060, 1067 (9th Cir.1996) ("We conclude Pacific Lumber waived its Daubert objections to EPIC’s scientific evidence of impaired breeding by failing to request a ruling on the admissibility of the evidence in the district court.”); Christopher v. Cutter Labs., 53 F.3d 1184, 1192 (11th Cir. 1995) ("If Armour believed that Dr. Robinson's testimony was statistically invalid, it should have objected to that testimony, giving him the chance to explain his answer.... Absent an objection, we can review the challenged evidence only for plain error.”); McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1406-07 (8th Cir.1994) ("We need not reach this issue, however, because JCI failed to object to Jacobson's testimony on the basis that he was not qualified as an expert or that he lacked a scientific basis for his opinions.”).

. See H.E. Stevenson v. E.I. DuPont De Nemours and Co., 327 F.3d 400, 406-07 (5th Cir.2003) (DeMoss, J.); SEC v. Snyder, 292 Fed.Appx. 391, 400 n. 1 (5th Cir.2008) ("Many of Snyder's arguments appear to be belated attempts to challenge the admissibility of Hoffman’s opinions under Fed.R.Evid. 702 and Daubert, rather than challenges to the sufficiency of the evidence. Because Snyder did not object to the admissibility of Hoffman's testimony concerning the accounting practices at issue, that issue has been forfeited.”) (internal citation omitted); United States v. Bates, 240 F.3d 1073, 2000 WL 1835092, *3 (5th Cir.2000) (unpublished) ("If the defendant fails to object to the expert’s testimony, then the defendant ‘waives appellate review absent plain error.’ ”).

. Consider hearsay which is generally inadmissible on grounds of unreliability. However, if hearsay evidence is admitted into testimony without an objection, it is treated as competent evidence for the jury to weigh and on which to rest its verdict. See Gochicoa v. Johnson, 118 F.3d 440, 448 n. 7 (5th Cir.1997) ("Otherwise inadmissible hearsay admitted without objection is treated the same *467 as any other evidence, and may be considered by the jury in support of its verdict.”) (interpreting Texas law); U.S. v. Spletzer, 535 F.2d 950, 955 n. 7 (5th Cir.1976).